UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

LYNN WYNN                                                                    PLAINTIFF

V.                                               CIVIL ACTION NO.: 3:09-cv-717-DPJ-FKB

MISSISSIPPI DEPARTMENT OF
HUMAN SERVICES, ET AL.                                            DEFENDANTS

ORDER

This employment-discrimination case is before the Court on Defendants' Motion for

Summary Judgment [20] pursuant to Federal Rule of Civil Procedure 56.  Plaintiff Lynn Wynn

has responded in opposition [26, 28].  The Court, having considered the memoranda and

submissions of the parties, finds that Defendants' Motion should be granted.

I.        Facts and Procedural History

Plaintiff Lynn Wynn works as a paralegal specialist in the Child Support Division of the

Mississippi Department of Human Services ("DHS").  Wynn's troubles with her employer began

in late 2006 with the arrival of her supervisor, Defendant Larry Carter.  According to Wynn,

Carter (who is African-American) treated Wynn differently because she is a dark-skinned

African American.  In particular, Wynn avers that because of her darker complexion, Carter

required Wynn to participate in staff meetings held outside to accommodate himself and other

smokers.  She also believes that Carter would sign-in for coworker Dolly Chambers—a lighter-

skinned African American—when she was running late, but changed Wynn's sign-in times and

generally subjected her to more stringent requirements.  Wynn complained to Carter's

supervisors, Wally Naylor, Director of the Child Support Division, and Jason Bayles, a senior

attorney, in July 2007, but the situation did not improve.

In fall 2007, Wynn was disciplined on two occasions.  First, in September 2007, Staff Attorney Anitra Eubanks issued an official reprimand, charging Wynn with failing to perform required tasks and acting unprofessionally when confronted about the failure.  Wynn claims that she was following Carter's instructions, yet Carter did nothing to clear up the matter.

Second, on November 20, 2007, Carter issued a notice of disciplinary action when Wynn failed to complete the "morning docket" in a timely manner and supposedly lied to cover-up the error.  Shortly thereafter, DHS suspended Wynn with pay.  Wynn insists that she completed the task in advance of the deadline and further complains that even if she did miss the deadline, suspension was too severe.  On February 4, 2008, DHS reinstated Wynn, but she contends that, upon her return, Carter and her paralegal coworkers snubbed her, she was not returned to her prior duties, and she was required to answer the telephone more often than other paralegals.

On February 22, 2008, Wynn filed a charge of discrimination based on color and retaliation with the Equal Employment Opportunity Commission.  Wynn complained of "harassment, intimidation, different terms and conditions of employment, violations of privacy and defamation by [her] supervisor, Larry Carter on a continuous basis creating a hostile work environment."  Defs' Mot. [20] Ex. G.  Wynn continued, "I have been further retaliated for opposing Mr. Carter's treatment with many of my paralegal duties being stripped from me and I have been relegated to the performance of menial task[s]."  *Id.*

After receiving notice of her right to sue, Wynn filed this action against DHS, Executive Director Don Thompson, Naylor, Bayles, and Carter, alleging discrimination and retaliation in violation of Title VII , 42 U.S.C. § 1981, and the Equal Protection Clause and state law claims of

negligent and intentional infliction of emotional distress.   Defendants have now moved for summary judgment as to all claims.

II.	Summary Judgment Standard

Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil Procedure when evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law.  The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  *Id.* at 323.  The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'"  *Id.* at 324 (citation omitted).  In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts."  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).  When such contradictory facts exist, the court may "not make credibility determinations or weigh the evidence."  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

In the present case, it is important to note that conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments have never constituted an adequate

substitute for specific facts showing a genuine issue for trial.  *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1997); *Little*, 37 F.3d at 1075 (5th Cir. 1994) (en banc).  The 2010 amendments to Rule 56 now make this abundantly clear.  Pursuant to Rule 56(c)(1), a party asserting that a fact "is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials."  Moreover, Rule 56(c)(3) now states:  "Materials Not Cited.  The court need consider only the cited materials, but it may consider other materials in the record."  *Accord Jackson v. Cal-W. Packaging Corp.*, 602 F.3d 374, 379–80 (5th Cir. 2010) ("We have explained that 'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'") (citations and quotations omitted).

III.    Analysis

    A.    Title VII

Wynn contends that DHS treated her less favorably than a lighter-skinned African American coworker in violation of Title VII of the Civil Rights Act of 1964.  *See* 42 U.S.C. § 2000e-2 (2006).  She further alleges that DHS retaliated against her for complaining about Carter.[1]

---

[1] Title VII's liability extends only to an "employer," and here the employer is DHS.  42 U.S.C. § 2000e-2(a).  All claims against individual defendants under Title VII are dismissed.

1.      Discrimination

Wynn pursues a Title VII disparate-treatment claim.[2]  As Wynn notes, there is no direct

evidence of discrimination.  She therefore followed the familiar *McDonnell Douglas* burden-

shifting analysis.  *McDonnell Douglas v. Green*, 411 U.S. 792 (1973).  That analysis begins with

the prima-facie case under which Wynn must show:

> (1) [s]he is a member of a protected class, (2)[s]he was qualified for the position
> at issue, (3)[s]he was the subject of an adverse employment action, and (4)[s]he
> was treated less favorably because of h[er] membership in that protected class
> than were other similarly situated employees who were not members of the
> protected class, under nearly identical circumstances.

*Lee v. Kan. City S. Ry.*, 574 F.3d 253, 259 (5th Cir. 2009).  DHS insists that Wynn cannot meet

the third and fourth prongs.

a.      Adverse Employment Action

The third prong of the analysis requires proof of an adverse employment action.

"'[A]dverse employment actions include only ultimate employment decisions such as hiring,

---

[2]Wynn's Response mentions the term "hostile work environment," but any such claims
are hereby dismissed.  First, it is not clear that she pleaded a hostile-work-environment claim.
Although the term is referenced in the "Facts" section of her Complaint, Pl.'s Comp. ¶ 21, it is
not among the enumerated counts found in the "Claims" section.  Second, even if sufficiently
pleaded, it has been abandoned.  Wynn's Response provides a substantial discussion of the law
regarding a disparate-treatment claim under Title VII and analyzes her case under *McDonnell
Douglas* burden shifting.  Hostile-work-environment claims are decided under a distinct and
detailed set of tests that Wynn never mentions.  *See Black v. N. Panola Sch. Dist.*, 461 F.3d 584,
588  n.1 (5th Cir. Miss. 2006) ("[Plaintiff's] failure to pursue this claim beyond [the] complaint
constituted abandonment.").  Finally, even if pleaded and not abandoned, Wynn failed in her
burden under Rule 56.  Faced with a motion for summary judgment, Wynn had the duty to
"designate 'specific facts showing that there is a genuine issue for trial.'"  *Celotex Corp.*, 477
U.S. at 324.  Although the words "hostile work environment" appear in her Response, she
never designates specific record evidence demonstrating a jury question under the applicable standards
(*e.g.*, severity, pervasiveness, compliance with grievance procedures, etc.).

granting leave, discharging, promoting, or compensating.'" *McCoy v. City of Shreveport*, 492
F.3d 551, 559 (5th Cir. 2007) (quoting *Green v. Adm'rs of Tulane Educ. Fund*, 284 F.3d 642,
657 (5th Cir. 2002)).  In her Response to Defendants' Motion, Wynn addresses the first, second
and fourth elements of the prima-facie case, but her analysis skips the third element.  Pl.'s Resp.
[28] at 14-16.  This omission would justify summary judgment pursuant to Rule 56(c).  But
assuming Wynn relies on those instances addressed elsewhere in her Response, the incidents fall
into two general groups, neither of which constitute an ultimate-employment decision.

First, Wynn makes reference to various workplace slights such as (1) paralegal staff
meetings held in the smoking area; (2) Carter's unprofessional and rude behavior; (3) stringent
requirements as to arrival time; (4) being told to go to lunch; (5) unannounced changes in work
procedures; (6) being asked to remove files from the floor of her office; and (7) being assigned to
work at the front desk more often than other paralegals.  These events when viewed in a light
most favorable to Wynn are not ultimate-employment decisions.  *McCoy*, 492 F.3d at 559.

Second, Wynn references the September 2007 reprimand and the suspension without pay
in November 2007.  Again, these acts are not, as a matter of law, considered ultimate-
employment decisions.  *See McCoy*, 492 F.3d at 560 (placing the plaintiff on administrative
leave was not an adverse employment action); *Preston v. Tex. Dep't of Family & Protective
Servs.*, 222 F. App'x 353, 358 (5th Cir. 2007) ("Written admonishments do not rise to the level
of ultimate employment actions."); *Dutton v. Univ. Healthcare Sys., L.L.C.*, 136 F. App'x 596,
601 (5th Cir. 2005) (finding that written reprimand is not an adverse employment action in
FMLA retaliation context); *Haygood v. Peters*, 51 F. App'x 930 (5th Cir. 2002) (affirming
district court finding that a poor performance evaluation did not constitute a legally cognizable

6

adverse-employment action in discrimination action).  In short, Wynn has failed to show that she

suffered an adverse-employment action.

     b.  Comparator

  While the Court's analysis could end here, Wynn's claim likewise falls short on the

fourth prong of the test.  As explained by the Fifth Circuit,

> [W]e require that an employee who proffers a fellow employee as a comparator
> demonstrate that the employment actions at issue were taken "under nearly
> identical circumstances."  The employment actions being compared will be
> deemed to have been taken under nearly identical circumstances when the
> employees being compared held the same job or responsibilities, shared the same
> supervisor or had their employment status determined by the same person, and
> have essentially comparable violation histories. And, critically, the plaintiff's
> conduct that drew the adverse employment decision must have been "nearly
> identical" to that of the proffered comparator who allegedly drew dissimilar
> employment decisions.  If the "difference between the plaintiff's conduct and that
> of those alleged to be similarly situated accounts for the difference in treatment
> received from the employer," the employees are not similarly situated for the
> purposes of an employment discrimination analysis.

*Lee v. Kan. City S. Ry.*, 574 F.3d 253, 259–60.

  Wynn generally argues that she was treated less favorably than Dolly Chambers, the only

light-skinned paralegal Wynn identified.  When asked how Chambers was treated differently,

Wynn explained that Carter yelled at Wynn but not Chambers, required Wynn to answer the

telephone more often than Chambers, and signed-in for Chambers when she called in late but

would not answer when Wynn attempted to call in late.  Def.'s Mot. [20] Ex. I, Wynn Dep. at 7,

8, 14.  Simply put, this perceived disparate treatment does not relate to an adverse employment

action, and none of these claims would have survived the third prong of the prima- facie test.

  Wynn's more serious allegations relate to the reprimand and suspension, but even

assuming these acts represented ultimate-employment actions—which they don't—Wynn has

never suggested that Chambers—the only light-skinned comparator—engaged in "nearly identical conduct" with different consequences. *See Preston*, 222 F. App'x at 358 ("While [the plaintiff] points to the alleged preferential treatment given to several employees to satisfy this burden, she fails to present any evidence that those employees engaged in 'nearly identical' misconduct for which she was terminated.").

Because Wynn cannot meet the third or fourth prongs of the prima facie case, her Title VII discrimination claim is dismissed.

> 2.    Retaliation

For Wynn to establish a prima-facie case of retaliation she must show (1) that she engaged in a protected activity; (2) that an adverse employment action occurred; and (3) that a causal link existed between the protected activity and the adverse action. *See LeMaire v. Louisiana*, 480 F.3d 383, 388 (5th Cir. 2007).

The threshold question is whether Wynn engaged in protected activity. To constitute protected activity, Wynn must have complained about conduct "made an unlawful employment practice by" Title VII. 42 U.S.C.A. § 20003-3(a).

> Title VII does not protect opposition to all forms of unscrupulous conduct. Instead, Title VII protects only opposition to discrimination based on "race, color, religion, sex, or national origin." Magic words are not required, but protected opposition must at least alert an employer to the employee's *reasonable* belief that unlawful discrimination is at issue.

*Brown v. United Parcel Serv., Inc.*, 406 F. App'x 837, 840 (5th Cir. 2010) (citations omitted) (emphasis added).

It is undisputed that Wynn complained to Bayles and Naylor about Carter. What is not clear is whether she complained that he discriminated because Wynn is dark-skinned. General

grievances about workplace inequities or even harassment are not protected conduct.  *See Brown*, 406 F. App'x at 840 (affirming summary judgment on retaliation claim and noting that "although [the plaintiff] complained about unfair work distribution, unpaid overtime, and selective enforcement of a lunch policy shortly before his termination, [he] did not complain about race, color, religion, sex, or national origin discrimination") (citing *Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1203 (10th Cir. 2008) (finding that general complaints about company management and negative performance evaluation without referencing age discrimination will not suffice); *Sitar v. Ind. Dep't of Transp.*, 344 F.3d 720, 727–28 (7th Cir. 2003) (stating that complaining about being "picked on," without mentioning discrimination or otherwise indicating that gender was an issue, does not constitute protected activity, even if the employee honestly believes she is the subject of sex discrimination)); *Tratree v. BP N. Am. Pipelines, Inc.*, 277 F. App'x 390, 396 (5th Cir. 2008) (affirming summary judgment on retaliation claim where the plaintiff "complained of unfair treatment directly in comparison to [a younger employee], but he never referred to the discriminatory treatment as age-based").

In this case, Wynn's deposition testimony identified only two items about which she complained:  (1) that the paralegal staff (which included only one light-skinned co-worker) was required to meet in a smoking area; and (2) that Carter would sign-in for Chambers when she called in late.  Pl.'s Dep. 6, 8.  Defendants aptly argued in their Memorandum [21] that Wynn offered no evidence that she ever complained that Carter took these alleged actions because Wynn's skin is darker than Chambers' skin.  Def.'s Mem. [21] 19, 23.  Absent such evidence, the claim must fail.  *Brown*, 406 F. App'x at 840 (affirming summary judgment).

9

Once Defendants raised the argument, Wynn was required to respond and direct the Court to "specific facts" creating a triable issue. *Celotex Corp.*, 477 U.S. at 324.  In this context, Wynn was required to direct the Court to record evidence suggesting that she complained of conduct based on color.  42 U.S.C. § 2000e–3(a).  Instead, Wynn's response to the retaliation portion of Defendants' Motion recited legal standards under Title VII and then offered the following argument:  "Given the application of this standard is a fact-based inquiry to be decided by the trier of fact, summary judgment would not be appropriate."  Pl.'s Resp. [28] at 25.  Wynn's Response is not legally insufficient.  Fed. R. Civ. P. 56(c).  And based on the complaints she described in her deposition, she has not shown protected activity.  *Brown*, 406 F. App'x at 840 (affirming summary judgment).

   That said, the Court endeavored to consider the record as a whole, including Wynn's attached Declaration stating that she complained "about the hostile work environment" and that "Carter subjected [her] to more stringent requirements than [her] similarly situated co-workers."  Wynn Decl. [29] ¶¶ 5, 6.  These statements constitute Wynn's best evidence of protected activity, but as Defendants note, even these statements fall short for two reasons.[3]

First, protected activity must reference conduct "made an unlawful employment practice by" Title VII.  42 U.S.C.A. § 20003-3(a).  The difference between evidence that Wynn objected to a hostile-work environment and evidence that she complained of harassment "based on" color is not a mere technicality.  Title VII protects opposition only when the plaintiff opposes conduct Title VII prohibits.  As often stated, Title VII "does not set forth 'a general civility code for the

---

[3]  In the only deposition excerpts found in the record, Wynn never mentions hostile-work-environment complaints much less complaints of discrimination based on color.

American workplace.'" *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006) (citing *Oncale v. Sundowner Offshore Servs., Inc*., 523 U.S. 75, 80 (1998)).  In *Oncale*, the Court explained that "Title VII does not prohibit all verbal or physical harassment in the workplace; it is directed only at discrimination because of [a protected characteristic]."  523 U.S. at 80 (citations and quotations omitted).  The Court then reiterated, "We have never held that workplace harassment . . . is automatically discrimination because of sex merely because the words used have sexual content or connotations."  *Id.*

Thus, when considering Wynn's complaints to upper management, it is not enough that she claims to have complained that the environment was hostile or that a similarly-situated co-worker received better treatment.  *See*, *e.g*., *Tratree*, 277 F. App'x at 396 (affirming summary judgment because plaintiff "never referred to the discriminatory treatment as age-based").  To enjoy Title VII protection, Wynn was required to prove complaints sufficient to place the employer on notice that her complaints were related to discrimination "based on" color.  *Brown*, 406 F. App'x at 840 ("Title VII does not protect opposition to all forms of unscrupulous conduct.").  Here, the evidence is not sufficient to demonstrate that the employer would have know that Wynn believed Carter was treating her less favorably because her skin is darker than that of another African American coworker [4]

---

[4]Interestingly, even Plaintiff's Complaint omits reference to cognizable protected activity:

> Plaintiff complained to Defendants Wally Naylor and Jason Bayles in July 2007, about being called outside to the smoking area by her supervisor, Defendant Larry Carter, to participate in a staff meeting.

> Plaintiff complained to Defendants Wally Naylor and Jason Bayles in July 2007, about the unprofessional and rude manner in which her supervisor, Defendant Larry Carter would treat her in the presence of clients.

Wynn faced the burden of rebutting Defendants' argument—based on her deposition testimony—that she never complained of conduct made unlawful by Title VII. As the docket will reflect, the Court gave Wynn several opportunities to properly respond. *See* Fed. R. Civ. P. 56 (e)(1). If Wynn complained of color-based discrimination (something she did not describe in her deposition), then she could have easily addressed Defendants' contention in her Declaration by detailing her complaints. But she did not, and her Response makes no reference to Defendants' argument. *See* Fed. R. Civ. P. 56(c)(1)(A) and (e). Pursuant to Rule 56(c)(3), the Court was under no duty to consider the Declaration with respect to this issue, but having done so, the Court is still left with conclusory allegations rather than specific facts regarding the salient issue Defendant plainly raised. *TIG Ins. Co.*, 276 F.3d at 759 (noting duty to come forward with specific facts). Wynn has not met her burden.

Defendants contend that references to a hostile-work environment fail to show protected activity for a second reason—no reasonable person could have believed that a color-based hostile-work environment existed. "To satisfy [the] opposition requirement, [employees] need only show that [they] had a reasonable belief that the employer was engaged in unlawful employment practices." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 348 (5th Cir. 2007) (citations and quotations omitted).

---

Plaintiff complained to Defendants Wally Naylor and Jason Bayles in July 2007, about her supervisor, Defendant Larry Carter notifying her co-workers of changes in work processes and procedures without also notifying her.

. . .

Plaintiff complained about the disparate treatment to management on several occasions.

Pl.'s Comp. [1] ¶¶ 12, 13, 14, 22.

In *Turner*, the employee lodged two complaints about a supervisor's use of a racially derogatory term.  The Fifth Circuit held, that "[b]ecause Turner could not have reasonably believed that Colston's 'ghetto children' statements constituted an unlawful employment practice in and of themselves, Turner's response to this incident cannot be considered protected activity." *Id*. at 349.

Here, Defendant's initial Memorandum argued this point at great length, analyzing the pre-reprimand conduct in light of the applicable hostile-work environment standards.  Def.'s Mem. [21] 18–20.  Wynn never responded to the argument and never directed the Court to any evidence suggesting that a reasonable person would believe that the alleged pre-reprimand acts constituted color-based hostile-work environment.  Instead, she merely observed that questions of fact exist.  Wynn's retaliation claim is due to be dismissed.

B.      Section 1983

Wynn employs § 1983 as a vehicle to assert claims of discrimination and retaliation in violation of § 1981 and a "class-of-one" equal protection claim.

1.      Equal Protection

Defendants point out that the Equal Protection Clause does not apply to the class-of-one theory in the context of public employment disputes.  *Engquist v. Or. Dep't of Agr.*, 553 U.S. 591, 609 (2008) ("[R]atifying a class-of-one theory of equal protection in the context of public employment would impermissibly 'constitutionalize the employee grievance.'") (quoting *Connick v. Myers*, 461 U.S. 138, at 154 (1983)).  Accordingly, Wynn's equal protection claim is dismissed.

13

2.      Section 1981

As for Wynn's § 1981 claims, the Court notes that "claims brought pursuant to Title VII and § 1981 are 'governed by the same evidentiary framework,' such that the analyses under both statutes are substantively the same . . . ." *Jackson v. Watkins*, 619 F.3d 463, 466 (5th Cir. 2010) (quoting *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 281 n.7 (5th Cir. 2004)).  Because the Court determined that Wynn failed to make out a prima facie case of discrimination or retaliation under Title VII, her § 1981 claims are likewise due to be dismissed.

C.      State Law Claims

Having eliminated all of Wynn's federal claims, the Court now turns to Wynn's state-law claims—negligent and intentional infliction of emotional distress.  District courts may decline supplemental jurisdiction over "a claim" when all claims over which the court had original jurisdiction have been dismissed. 42 U.S.C. § 1367(c)(3) (2006).  But while the "'general rule' is to decline to exercise jurisdiction over pendent state-law claims" under such circumstances, the "rule is neither mandatory nor absolute." *Batiste v. Island Records Inc.*, 179 F.3d 217, 227 (5th Cir. 1999) (quoting *McClelland v. Gronwaldt*, 155 F.3d 507, 519 (5th Cir. 1998)).  Rather, the Court must consider "both the statutory provisions of 28 U.S.C. § 1367(c) and the balance of the relevant factors of judicial economy, convenience, fairness, and comity." *Batiste*, 179 F.3d at 227 (citations omitted).  In this case, the matter is now nearly four years removed from the date of the facts, discovery is complete, and the issues are not complex.  The *Batiste* factors weigh in favor of pendent jurisdiction.

Having accepted supplemental jurisdiction, the Court readily concludes that Defendants are entitled to summary judgment.  First, Wynn's negligent-infliction-of-emotional-distress

14

claim would fall under the exclusivity provision of the Mississippi's Workers' Compensation Act. Miss. Code Ann. § 71-3-9; *see McNeill v. City of Canton*, No. 3:06cv74-DPJ-JCS, 2008 WL 249437, at * 15 (S.D. Miss. Jan. 29, 2008), *aff'd* 291 F. App'x 670 (5th Cir. 2008) (holding that negligent-infliction-of-emotional-distress claims are barred); *see also Benoit v. Bates*, No. 1:08cv391-LG-RHW, 2010 WL 4637672, at *4 (S.D. Miss. Nov. 8, 2010) ("[A] claim for negligent infliction of emotional distress does not arise from acts of intentional discrimination, and any state tort claim grounded in negligence is barred by the Workers' Compensation Act.").

Second, "meeting the requisites of a claim for intentional infliction of emotional distress is a tall order in Mississippi," *Riley v. F.A. Richard & Assocs.*, 16 So. 3d 708, 719 (Miss. App. 2009) (citations omitted), and such claims "will not ordinarily lie for mere employment disputes." *Nuwer v. Mariner Post-Acute Network*, 332 F.3d 310, 316 (5th Cir. 2003) (quoting *Lee v. Golden Triangle Planning & Dev. Dist., Inc.*, 797 So. 2d 845, 851 (Miss. 2001). "[O]nly where the conduct has been so outrageous in character, and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community" will courts impose liability. *White v. Walker*, 950 F.2d 972, 978 (5th Cir. 1991) (applying Mississippi law). Finally, "mere insults, indignities, threats, annoyances, petty oppression or other trivialities" are not actionable in Mississippi. *Jenkins v. City of Grenada, Miss.*, 813 F. Supp. 443, 447 (N.D. Miss. 1993) (quoting Restatement (Second) of Torts § 46 cmt. d. (1965)); *see also Davis v. AltaCare Corp.*, No. 2:05cv2027, 2007 WL 2026438, at *8 (S.D. Miss. July 9, 2007). The facts, even when viewed in a light most favorable to Wynn, present nothing more than a garden variety employment dispute for which Mississippi law recognizes no cause of action. Wynn's state-law claims are due to be dismissed.

IV.     Conclusion

        The parties offered other arguments, but ruling on those issues would not affect this

Order.  Based on the foregoing, Defendants' Motion for Summary Judgment is granted.

Plaintiff's claims are dismissed with prejudice.

        A separate judgment in accordance with Federal Rule of Civil Procedure 58 will be

entered.

        **SO ORDERED AND ADJUDGED** this the 4th day of August, 2011.

                                        s/ *Daniel P. Jordan III*
                                        UNITED STATES DISTRICT JUDGE